UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VINCENT POPE, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 4:04CV856 CDP |
| DAVE DORMIRE, | ) ) ) |
| Respondent. | ) ) |

**MEMORANDUM AND ORDER**

Petitioner Vincent Pope is currently incarcerated at the Missouri State Penitentiary in Jefferson City, Missouri for the murder of Kenneth Schenker. Petitioner was convicted by a jury of one count of second-degree murder and one count of armed criminal action. He was sentenced to life imprisonment on the murder count and a consecutive six-year sentence on the armed criminal action count.

Pope seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. None of Pope's claims entitle him to habeas corpus relief, and so I will deny his petition for the writ.

**I.     FACTUAL BACKGROUND**

The following recitation of facts comes from the supplemental memorandum filed by the Missouri Court of Appeals for the Eastern District with its opinion

affirming Pope's post-conviction motions:[1]

>   Movant [Vincent Pope] regularly sold drugs to Mr. Schenker ("Victim"). On March 1, 1994, Movant, Victim and two other individuals were together in an alley in the City of St. Louis. Movant stood in the alley while he argued with Victim who was sitting in a parked car. During the argument, Movant shot Victim several times. Victim died from a gunshot wound to the abdomen.
>
>   Movant left St. Louis and in November 1997 was arrested in California. Police in California interviewed Movant and audiotaped him. In February of 1998, St. Louis detectives interviewed Movant and videotaped the interview. Movant discussed "gang banging," selling drugs and shooting Victim in both of these interviews.
>
>   Movant was charged with first degree murder and armed criminal action. At the trial, two witnesses testified to seeing Movant shoot Victim. In addition, the State sought to introduce Movant's audiotape and videotape statements. Trial counsel objected to portions of the audiotape where Movant talks generally about "gang banging," and the State agreed to redact those portions.
>
>   A jury found Movant guilty of murder in the second degree and armed criminal action. The trial court sentenced Movant to a term of life imprisonment on the murder charge and a consecutive term of six years imprisonment on the armed criminal action charge.

State v. Pope, No. ED82768 at 2-3 (Mo. Ct. App. Dec. 16, 2003).

## II. PROCEDURAL BACKGROUND

On December 11, 2001, the Missouri Court of Appeals for the Eastern District rejected the two claims of trial court error brought by Pope in his direct appeal and affirmed the conviction and sentence without published opinion. State

---

[1] Under 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Leubbers. 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lombolt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)).

2

v. Pope, No. ED79155 at 4 (Mo. App. E.D. Dec. 11, 2001). Pope then brought a motion for post-conviction relief pursuant to Mo. Sup. Ct. R. 29.15; the trial court denied that motion without an evidentiary hearing. The Missouri Court of Appeals affirmed the denial of post-conviction relief on December 16, 2003 without published opinion. Pope, No. ED82768 at 8.

Pope now seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254, asserting that his conviction and sentence violate his Fifth, Sixth and Fourteenth Amendment rights.

### III. GROUNDS RAISED

Petitioner seeks habeas relief on the following grounds:

1. His Sixth Amendment right to an impartial jury was violated by the trial court's refusal to strike venireperson Fuchs for cause after she stated she would expect the defense to present evidence; Missouri Rev. Stat. § 494.480.4, which provides that defendants may not appeal a trial court's decision not to strike a juror if the juror does not actually serve on the jury, violates equal protection and due process.

2. His rights to due process and a fair trial were violated when the trial court ordered Keith Dixon to testify after Dixon invoked his Fifth Amendment right to remain silent.

3. He was denied effective assistance of trial counsel when counsel failed to object to testimony from Keith Dixon that the Petitioner was a gang member.

4. He was denied effective assistance of appellate counsel when counsel failed to contest on direct appeal the trial

3

court's refusal to submit a voluntary manslaughter instruction.

## IV. **DISCUSSION**

Under 28 U.S.C. § 2254(d), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus shall not be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Shafer v. Bowersox, the Eighth Circuit articulated the standards for subsection (1) as follows:

> The "contrary to" clause is satisfied if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrives at the opposite result. A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable."

329 F.3d 637, 646-47 (8th Cir. 2003) (quoting Williams v. Taylor, 529 U.S. 362, 405, 411, 413 (2000)).

Under subsection (2),

a state court decision involves "an unreasonable determination of the facts in light of the evidence presented in state court proceedings," 28 U.S.C. § 2254(d)(2), only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record.

Lombolt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003).

If the petitioner has not properly presented this claims in state court, however, the federal court cannot review them:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B) (i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). To meet the exhaustion requirement, a petitioner must "'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Conner, 404 U.S. 270, 275 (1971)).

### Claim 1: Trial Court's Failure to Strike Venireperson Fuchs For Cause

Pope claims that his right to a fair jury was denied when the trial court refused to strike venireperson Fuchs for cause. He asserts that Fuchs stated she expected the defense to present evidence and never stated she would follow the

5

law. When the trial court denied the request to strike Fuchs for cause, Pope used one of his peremptory strikes to remove her from the panel. On direct appeal, the Missouri Court of Appeals found that Missouri Rev. Stat. § 494.480.4 barred this claim. Section 494.480.4 provides in part:

> The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for granting of a motion for new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant.

Pope argues here that the statute is unconstitutional and violates his equal protection and due process rights. Although he challenged the constitutionality of the statute on his direct appeal, he did not raise that challenge before the trial court, and so the Court of Appeals found that it was waived.

I cannot reach the merits of Pope's challenge to the constitutionality of the Missouri statute, because he did not properly raise it in the Missouri courts. Even were the claim not procedurally barred, however, I would deny it, as his claim that equal protection requires that criminal litigants be treated the same as civil litigants is nonsensical.

Moreover, the Missouri statute reflects the United States Supreme Court holding that peremptory challenges are not of a constitutional dimension and a loss of a strike does not violate the constitutional right to a fair jury. In Ross v. Oklahoma, 487 U.S. 81, 88-90 (1988), the Supreme Court directly held that a State

may require a defendant to exercise peremptory strikes where the trial court erroneously refused to strike for cause. The Court upheld an Oklahoma rule which provided that a defendant cannot establish reversible error in the overruling of a meritorious challenge for cause unless the error results in an incompetent juror actually serving in the case. Id. Under Ross, the petitioner must demonstrate that he was forced to accept an impartial juror despite the use of peremptory challenges. Because the challenged juror here did not serve on the jury, Pope cannot make this showing. Ground 1 is denied.

## Claim 2: Trial Court's Decision to Compel Testimony from Keith Dixon After He Invoked the Fifth Amendment

Pope claims that he was deprived of due process and a fair trial when the trial court ordered Keith Dixon to testify after Dixon invoked his Fifth Amendment right to remain silent. Specifically, Pope asserts that the court failed to inquire as to the nature of the answers Dixon was reluctant to give and whether they may actually have tended to incriminate Dixon before requiring Dixon to testify.

Dixon was a very problematic witness, and the testimony he ultimately gave was extremely contradictory. He had given a deposition to the lawyers not long before trial, but when called to testify at trial he invoked his Fifth Amendment privilege against self-incrimination. The prosecutor sought and obtained an order of immunity from another judge (not the trial judge) and Dixon was again called to testify. He again attempted to invoke the fifth, but the trial judge ordered him to

7

testify, after reading and explaining the order of immunity to him. He persisted in his refusal to testify. The court held a contempt hearing outside the presence of the jury, and Dixon indicated that he feared for his family because they still lived in the neighborhood where the murder had occurred, and stated that although he had agreed to cooperate with the police and make statements, he did not agree to testify. The court then held him in contempt and ordered him held in jail unless he purged himself of contempt and testified. Shortly thereafter, the Sheriff notified the court that Dixon had agreed to testify if the courtroom were cleared of spectators.[2] Apparently the court refused this request, but Dixon again was called to testify.

Dixon's testimony this time was totally inconsistent with the deposition testimony he had given earlier, and he was repeatedly impeached with the deposition. He testified that he was too far from the shooting to identify anyone or know who the shooter was, and that the court reporter at the deposition had taken his testimony down wrong. He also testified that he did not want to testify, that he considered the defendant "like family" because a cousin of Pope's was the father

---

[2]Although the record does not reveal what spectators were in the courtroom, there were obviously some of Pope's supporters there. Earlier that day a prosecution witness, Deandre Perkins, after testifying that he saw Pope shoot the victim, began shaking his head and stated, "I said I can't do this." When asked if he had seen someone in the courtroom that changed his mind he said, "My grandmother. I can't do this." He then answered several questions with "I don't know" or "I don't remember" and then stated "I'm not going to do it, I'm not testifying." When asked if he knew anyone in the courtroom, including "these folks over here that are just now clapping" he said he had never seen them. He gave denials or noncommittal answers to all other questions asked.

8

of his sister's baby. The next morning the prosecution asked to recall Dixon, because he had now agreed to testify truthfully.

In Dixon's last turn on the stand, he testified that he had lied the day before, and that he did see Pope shoot the victim. He testified that he had initially given different information to the police, because he didn't want to be involved. At various points in his testimony Dixon referred to the "Disciples," and stated that his fear for his family was fear of other members of the Disciples, not Pope.

The Court of Appeals reviewed this claim for plain error and concluded that there was no error in ordering Dixon to testify. The court held that Pope could not assert Dixon's right against self-incrimination, as it is a personal right. This is a correct statement of federal law. It is well settled that the Fifth Amendment privilege against self-incrimination is a personal privilege. Couch v. United States, 409 U.S. 322, 328 (1973). It adheres to the person, not to information that may incriminate him. "The Constitution explicitly prohibits compelling an accused to bear witness 'against himself': it necessarily does not proscribe incriminating statements elicited from another." Id. Thus, an accused has no standing to assert the Fifth Amendment rights of a witness.

Here, Petitioner was under no personal compulsion to testify. Rather, Petitioner complains that Dixon was improperly compelled to testify. The Fifth Amendment is designed to protect a witness from being forced to reveal

9

information that may tend to incriminate himself or herself. It is certainly not designed to operate as a muzzle to silence potentially damaging testimony by a witness offered against the accused. Thus, the decision of the Missouri Court of Appeals is in accord with clearly established federal law. Petitioner's second claim fails.

### Claim 3: Ineffective Assistance of Trial Counsel – Failure to Object to Testimony that Petitioner was a Gang Member

In his third claim, Pope alleges that his trial counsel provided ineffective assistance by failing to object to testimony by Keith Dixon that Petitioner was a member of the "Gangster Disciples" street gang. Pope claims that the references to the Disciples constituted impermissible character evidence. Both the motion court and Court of Appeals denied this claim of ineffective assistance of counsel.

To establish that counsel was ineffective, Pope must show that counsel did not perform to the degree of skill of a reasonably competent attorney, and as a result, that he was prejudiced. Strickland v. Washington, 466 U.S. 668, 687 (1984). In Strickland, the Supreme Court outlined a two-prong test. First, the Petitioner must identify specific acts or omissions made by counsel that "were outside the wide range of professionally competent assistance." Id. at 690. Second, the Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Failure to satisfy either prong is fatal to the claim. See

Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997).

Here, both the trial court and the Court of Appeals found that the references to Pope's membership in the Gangster Disciples were not used as impermissible character evidence or to suggest guilt by association. Rather, the evidence was used to explain the many prior inconsistencies in Dixon's statements.

The Missouri Court of Appeals reasonably determined that the gang membership testimony was admissible to explain the change in Dixon's testimony. Counsel's decision not to object, then, does not lie outside the wide range of "professionally competent assistance" under Strickland. The failure to object to admissible evidence does not rise to the level of ineffective assistance of counsel. Anderson v. Goeke, 44 F.3d 675, 680 (8th Cir. 1995) (citing Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir. 1992)).

Further, even if the gang membership testimony were properly objectionable, Pope has failed to satisfy the second Strickland prong. He must demonstrate that, but for counsel's failure to object, the result of his trial would have been different. Strickland, 466 U.S. at 694. As the Court of Appeals noted, the jury heard a substantial amount of evidence that Pope committed the fatal shooting. The State admitted two separate confessions into evidence in which he admitted shooting the victim. Additionally, two eyewitnesses testified they saw Pope shoot the victim. In light of this evidence, Petitioner cannot demonstrate that

11

the exclusion of testimony regarding his gang membership alone would have produced a different result at trial. Petitioner's third claim is denied.

**Claim 4: Ineffective Assistance of Appellate Counsel – Failure to Appeal the Trial Court's Refusal to Submit Voluntary Manslaughter Instruction**

Lastly, Pope asserts that his appellate counsel was ineffective for failing to appeal the trial court's refusal to submit a voluntary manslaughter instruction. During the instruction conference, defense counsel requested submission of a manslaughter instruction. The court denied the request. On direct appeal, Pope's appellate counsel did not challenge this decision. In affirming the motion court's denial of post-conviction relief, the Missouri Court of Appeals held that appellate counsel was not ineffective. I agree.

The failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question. Tatum v. Dormire, 183 F.3d 875, 878 (8th Cir. 1999); Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir. 1990). Even if a trial court's failure to instruct the jury on a lesser included offense could ever amount to a constitutional issue for habeas review, the proffered instruction must be warranted by the evidence. Tatum, 183 F.3d at 878. Where a state trial court refuses in a noncapital case to submit an instruction not supported by the evidence, dues process is not offended. Id.

As the Court of Appeals noted, Missouri law requires a trial court to give an instruction on voluntary manslaughter if "sufficient evidence supports a finding

that defendant caused the victim's death under the influence of sudden passion arising from adequate cause." Pope, No. ED82768 at 6 (citing State v. Redmond, 937 S.W.2d 205, 208 (Mo. banc 1996)). Sudden passion is defined as "passion directly caused by and arising out of provocation by the victim … which passion arises at the time of the offense and is not solely the result of former provocation." Mo. Rev. Stat. § 565.002(7) (1994). The degree of passion contemplated by Missouri law is "so extreme that for the moment, the action is being directed by passion, not reason." Tatum, 183 F.3d at 879. The evidence must reveal "a degree of passion … sufficient to substantially impair an ordinary person's capacity for self control." Id. (quoting Mo. Rev. Stat. § 565.002(1) (1994) (defining adequate cause)).

Here, the Missouri Court of Appeals determined that sudden passion was not so obvious from the record that an effective and competent lawyer would have appealed the trial court's refusal to instruct on voluntary manslaughter. This interpretation is well supported by the record. Pope points out that he and the victim were arguing immediately prior to the shooting. The Court of Appeals dismissed this by noting "there was no evidence of physical contact and words alone are not adequate provocation." Pope, No. ED82768 at 7 (citing Redmond, 937 S.W.2d at 208). Pope claims that on the day of the killing, the victim drove into Pope's neighborhood, laughed at him, and drove away, causing him to be

overcome by sudden passion. This cannot fairly be described as behavior that would substantially impair an ordinary person's capacity for self control. The only remaining information regarding potential provocation includes an allegation that the victim robbed Pope at gunpoint two weeks before the shooting. This confrontation, two weeks before the crime at issue here, cannot rise to the level of sudden passion as defined by Missouri law.

The record does not reveal sufficient evidence of sudden passion to warrant an instruction on voluntary manslaughter. Accordingly, the decision by appellate counsel not to argue this issue on appeal was not "outside the wide range of professionally competent assistance" under Strickland. The decision of the Missouri Court of Appeals was well supported by the evidence and in accord with federal law. Petitioner's claim is denied.

## V. CONCLUSION AND CERTIFICATE OF APPEALABILITY

After a thorough review of the record in this case, I find that all of Petitioner's claims for habeas relief fail and must be denied.

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a § 2254 proceeding unless a circuit justice or judge issues a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)A). To grant such a certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right. Id. at § 2253(c)(2); see Tiedeman v. Benson, 122 F.3d

518, 522 (8th Cir. 1997).  A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  <u>Cox</u>, 133 F.3d at 569 (citing <u>Flieger</u>, 16 F.3d at 882-83).

I find that reasonable jurists could not differ on any of Petitioner's claims, so I will deny a Certificate of Appealability on all points.

Accordingly,

**IT IS HEREBY ORDERED** that the petition for writ of habeas corpus filed by Vincent Pope is denied.

**IT IS FURTHER ORDERED** that Pope is not entitled to a Certificate of Appealability on any of his claims.

**IT IS FURTHER ORDERED** that the referral of this matter to United States Magistrate Judge Lewis M. Blanton is **VACATED**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2006.